I'd like to reserve two minutes for rebuttal, please. The clock counts down, and we'll try to help you with it. So when it says two, that means you've got two minutes left, okay? Total, okay. You're starting with ten, and away we go. Good morning, Your Honors. May it please the Court, I am Barbara Marcoulier, appearing on behalf of the petitioner in this case, Noah Tuiwainikai, who is present in court today. Petitioner concedes notice of the respondent's last-minute motion to dismiss filed Thursday evening. Today is Monday. We have not had a reasonable opportunity to respond. If an additional statement needs to be clarified on the IJ's order, then it can be taken care of on remand. Any such error, and we do not concede that there is one, is an overly technical procedural issue that is not fatal to the case. So you don't think it's jurisdictional? No, I don't concede that there is an issue there, because the IJ cannot withhold removal. The IJ granted withholding of removal. You can't have your removal withheld if there's no removal to withhold in the first place. But doesn't the removal come in the form of an order of removal, akin to a final judgment that would be entered by a district court, if this were a civil case in front of a United States district judge? The IJ acknowledged that we conceded removability at that hearing, and therefore he found removability and continued with the hearing. He couldn't have continued with a hearing on asylum or withholding of removal if there hadn't been a final judgment. Maybe my question was not clear. Ordinarily, our case law is pretty clear in a normal civil case, that a court of appeals cannot hear an appeal unless a final order has been entered in the district court. The final order is generally the judgment that the district court directs the clerk to enter, which signifies that the district court is finished with the case and then a notice of appeal is filed and it comes to us. The analogy here would be that in order to perfect an appeal from an immigration judge's ruling, there must be a final order of removal that is entered, and then presumably another order that withholds execution of that removal, which in the immigration statute is called withholding of removal. My question is, in the absence of such an order of removal, do we have jurisdiction from which a petitioner may file first a notice of appeal to BIA and then a petition for review in this court? This case has been pending for eight years, Your Honor. It was heard by the immigration judge appealed to the BIA. I think it would be a terrible travesty if we had to dismiss it, but you're not answering my question. The question is, is it jurisdictional or not? This issue is ruled in the Ninth Circuit by Lulong, which does acknowledge that this court has jurisdiction to review it. Unlike Molina Camacho and Lulong, the BIA in this case did not reverse the immigration judge's order, and therefore there's no issue of the BIA's order affecting the underlying final order, which the government acknowledged in its brief was the final order. Yeah, why don't we do this? I think the ten minutes is probably too short, given this last-minute issue that's arisen. I'll make one more suggestion as to how we might look at this. Let's hear from the government, and then we'll make sure you get a chance to respond. But my guess is that we judges will want you to have an opportunity not merely to respond orally, but to file a written response so you're not having to sort of do this on the fly. Judge Tallman's question had one way of looking at it, which is, of course, a genuine possibility. Another way of looking at it is this is not, of course, an appeal from a decision of a district court to us. It's an appeal from an agency action. So the question isn't final judgment in the sense from a district court. It's rather final agency action. As I read the BIA decision that came to us, cited by the government, it's clear that there's a mistake. That is to say, under the new rule from the BIA, if you're going to enter an order withholding removal, you also have to enter an order removing, so that if for some reason something happens, then the removal can simply happen. But it's not clear to me that this mistake is something that deprives us from jurisdiction. So having said that, why don't you go to the substance of the argument you were prepared to make before we got this last-minute motion from the government. We'll hear from the government. We'll let you respond on that point. But we're not going to cut this off so you're totally dependent upon answering on the fly. You can sit down, work through it in writing, do the ordinary thing. We're not going to sort of stick you with whatever the answer might be today on the fly. Thank you, Your Honor. And, counsel, while you're sitting thinking about it, would you take a look at page 1176 of Lulong 484F3? There's language in there that is the genesis of my question, which suggests that our jurisdiction depends on a final order of removal having been entered. So if you could take a look at that language specifically, that would help. Your Honors, this Court has jurisdiction to review the application of law to the undisputed facts and find the petitioner qualifies for an exception to the one-year filing rule for asylum pursuant to Real ID, Ramadan 2, and subsequent cases. We do not ask this Court to determine whether events occurred. The events are undisputed and a matter of historical fact, specifically that the petitioner came to U.S. lawfully as a visitor after his party won elections in his country. While he was in the U.S., there was a violent coup in his country that threw his party out of power. When the I.J. in this case stated, I find the petitioner has not met his statutory burden, he was not determining whether events occurred, and so he was not making a finding of fact. On the contrary, he was drawing a legal conclusion. Such matters of law are reviewable by this Court. Interpreting and applying the law is a question of law. Real ID was passed to address the constitutional issues pointed out by the Supreme Court in St. Cyr, including specifically reinstating judicial review. The statute expressly creates an exception for the filing time limit in the event of changed circumstances. Assuming that we have jurisdiction under the Ramadan line of cases, why should we reverse the I.J. and B.I.A. on the question of whether or not we have changed conditions? The judge wasn't determining whether those conditions existed. The judge was applying the law, which is a question of law. I understand that. That's a question of whether we have jurisdiction to redetermine the question. As I read what the I.J. said, he said, these do not qualify as changed conditions so as to excuse you from the one-year deadline. Am I getting that correct? Is that what he did? He stated, it's a quote from him, I find the petitioner has not met his statutory burden. Correct. So you're arguing to us not only do we have jurisdiction to review that, but that the I.J. made a mistake. So why was that a mistake? Because the regulation implementing the statutory provision for an exception specifically contemplates a list of what may constitute changed circumstances. Changed conditions in the applicant's country is the first one contemplated. Yeah, okay. And why is this change in conditions sufficient to excuse the late filing? I mean, things always change, right? I mean, so the Democrats are in power, the Republicans are in power, the Democrats are back in power. Someone says, well, now that we have President Obama, that's changed conditions so that, well, things change all the time. Why is the change that happened sufficient to excuse the late filing? Because when my client left his country, his party, on behalf of which he was very politically active and had been attacked on several occasions, which justified the granting of withholding of removal, his party was in power. While he was here, in a violent coup, his party was thrown out of power. That made a complete difference in his need for protection. And how long after the change of position so that his party is thrown out of power, how long after that change did he file his application for asylum, and was that a reasonable time? The coup happened in May. Events were ongoing. He applied and he was maintaining lawful status until July. He applied in April, the following April, five months later, and events were ongoing even up until the time of the mayor's hearing before the IJ, after he applied for asylum. It seems to me that's quite a long time to have waited after the changed conditions. Now, within a year of the change of conditions, but that's not quite how the statute's written. The statute's written, if there are changed conditions, there has to be an application made within a reasonable time. Now, unfortunately for all of us, or maybe fortunately, it's not a specific time, so we've got to fumble around with what reasonable might mean. Was there, I'll say it this way, a sliding scale of changed conditions? That is to say, was it immediately apparent to him upon the change of regime, the problems that would be created, or is there something in the record that says, well, it wasn't until six months later that he realized how bad things were going to become under the new regime? What's the record show? The record does show that, Your Honor. At the time of the coup, my client was still maintaining lawful status, and he was waiting to see what would happen. And as the months went on, there were additional facts that are demonstrated in the record, including at least three attacks on his family, including the sugar canes being destroyed, the brother's husband being burned down, the father being attacked. So there were ongoing events that are part of the record that continued until he finally realized at that point, after the brother's house was burned down, his father said, you really can't come home. It's too dangerous. You need to do something. And so that's when he started trying to investigate what he could do to change his status and stay. And even up until the time of the hearing on the merits, his father was attacked again. So there were ongoing events. If we were to hold that there were changed conditions sufficient to justify a late filing, but do we have to remand for the question to be determined by the I.J. whether there was application for asylum within a reasonable time after the change of conditions? The I.J. has not decided that question. He decided no changed conditions. That's correct. Neither the I.J. nor the government has ever mentioned that they thought that was an issue at all. Okay. Why don't we hear from the government? And because of this last-minute thing, we're a little over time. We'll make sure you get a chance to respond. Thank you, Your Honor. Good morning. Ted Durant for the United States. First off, counsel wants to apologize for the timing of that motion to dismiss. Counsel understands that sometimes timing is everything. And upon reviewing the 700 pages of record. So he was late applying for asylum. You're late raising the argument. Who gets excused for the lateness? Hopefully the government, Your Honor. The government gets excused but not him? The intervening case law was from 2008 from the board. Have you filed within a year after that? I have not, Your Honor. So the changed conditions. I'll leave you alone. Thank you. But because it's a jurisdictional issue, it's something that counsel felt compelled to raise. And upon going through the record, counsel found there was never a finding of removability. Are you talking about you or somebody else? Who is this mysterious counsel? Me, Your Honor. I was hoping to find a finding of removability as I pored through the 700 pages. And I didn't see anything remote to that. I did see where the immigration judge had stated that the petitioner had conceded his removability. But in a criminal case or before a military judge, if someone pleads guilty, that's not the same thing as a finding of guilty. So the government argues that this is a jurisdictional issue. In essence, no final order of removal. I read the BIA decision. It says clearly a mistake. And you're relying on that to say that it's jurisdictional. I didn't see anything in that most recent BIA decision to say more than it was a mistake. Where else are you going to find the fact that it's jurisdictional? I looked to the statute 101-847. And there's two ways that we have an order of deportation or an order of removal. And that's concluding that the alien is deportable or removable or ordering deportation. And we don't have that here. Whether or not the immigration judge slipped up is ____. Well, I understand that we don't have it. And I'm willing to assume that it's a mistake. But lots of mistakes aren't jurisdictional. But without a finding order of removal, counsel did not believe this court would have jurisdiction. Well, final order of removal may not be the same thing as final order for purposes of appeal. That's my question to you. I think it's one and the same, Your Honor. I think that had he made some other findings, some that you would have jurisdiction. And I know there's something in the law, although that may be addressing a slightly different circumstance that says it's jurisdictional. Do you have anything else? Your Honor, other than that this court reviews only final orders of removal. We have nothing. We have no order of removal, no finding of removability, and thus no jurisdiction. Now, some jurisdictional problems are non-waivable. Some are waivable. Assuming this is jurisdictional, why is it non-waivable? That is to say, raising something two days before the argument or four days before the argument sounds like waiver for many things. Well, it's statutory, Your Honor. This is statutory. But statutory doesn't necessarily mean non-waivable. Your Honor, I've never seen where we could waive it. Personal jurisdiction is statutory. That's a waivable defect. Yes, Your Honor. But would you like me to continue to the merits of the case? Not yet. I would like you to help me understand what we said in low law. Do you have that case before you? I have many cases. I have the excerpt that I quoted, Your Honor. Do you have page 1176 of 484F3? While you're looking for it, let me read the language that has gotten me puzzled. In low law, one of the issues that the in-bank court decided was whether or not the BIA itself had the authority to issue an order of removal where the IJ had not done it. And we said, no, the board doesn't have the power to do that. So to get back to the questions that Judge Fletcher was asking, it seems to me that when the board realized that a mistake had been made, it should have remanded the matter to the immigration judge in the first instance to enter the order of removal because we said in low law the board can't do it itself. But then we went on at page 1176 to say, because our jurisdiction is limited to the review of final orders of removal, citing 8 U.S.C. section 1252A, we held that where the BIA issues an order of removal in the first instance. There is no valid final order of removal, and consequently no jurisdiction in this court to review that legal nullity. So if we don't have jurisdiction to review a final order of removal that the board enters because it's a legal nullity, how can we have jurisdiction to review a decision of the immigration judge who never issued an order of removal? I don't think the court does. It doesn't have jurisdiction. Okay, but how about this? That is to say very clearly what the law says. We don't have decision to review a final order of removal that was never entered. But here we're not being asked to review a final order of removal. We're being asked to review an order that says you're too late to file for asylum. We're being asked to review an entirely different question. And that would be fine, Your Honor, if the threshold issue of jurisdiction were answered, which it has not been. Well, yeah, it has not been, and I understand, and I'm trying to figure out what the answer is. Jurisdiction issue is a tough one, and we're going to issue an order that will let your opponent provide a brief to respond to your last-minute motion. Why don't we turn to the merits for a minute? Okay, Your Honor. Because I'm interested in that. If we decide we have jurisdiction. If a guy in Fiji is persecuted by a nationalist party, then he comes to the U.S., and when he comes here, his party is dominant in Fiji. But while he's here, there's a coup in Fiji, and the party that persecuted him takes over. Now, why shouldn't that be changed circumstances that justify him starting his asylum quest? The nature of his claim has not changed at all. When he came here, he approached the asylum officer and complained of severe mistreatment from 1995 to 1998, right about to when he left, based on his political opinion. He was an ethnic Fijian who was assaulted by nationalists. But the nationalists, at the time he came here, the nationalists were out, and the party that he had advocated for was in power, as I understand it. So why would he need asylum if he sent back his parties in control? I think the nature of changed circumstances contemplates an entirely new claim. For example, if he were a Methodist. That's what you're saying, okay. Based on his regulation. Where's a law or precedent that says changed circumstances have to contemplate a new claim as opposed to change of circumstance in his home country? Well, the changes in the home country may affect the nature of the asylum claim based on what the regulation says, Your Honor. You're correct. But the entire record, the 700 pages in there, the immigration judge said there's been no material change. And if one reads the record, while there is a brief coup, the leader of which is now in life in prison, and there has been a change of election, which were free and fair, according to the State Department, there's been no persecution of ethnic Fijians based on political opinion. Everything in there from the coup on has been Indo-Fijian. The ethnic Fijians who have been there, that have 55% of the majority... Can I ask you this? Yes, Your Honor. We have record here of a cane field being burned, a house being burned. When did that happen? That happened in 2000, Your Honor. But none of it... Was that before or after the alleged change conditions? This was... Was this after the... This was after the coup, Your Honor. This was after the coup. This was in, I believe, it was alleged that the house was burned or the fields were burned in October of 2000. And the letters... And this was after the anti-Indo-Fijian government takes over again? Yes, Your Honor. It was Mr. Spate took over in May of 2000, and then this is... What was it? Well, then you can't say there's nothing in the record that shows that after the coup there's no persecution against Fijians because we've got it right here in the record in front of us with respect to this man's family. Well, there's... His fields have been burned, Your Honor, or so his father and brother say, but there's... What do you mean, so his father... We have a finding that says that he's telling the truth. Yes, Your Honor. You can't say... He's credible. You cannot say to us, given the state of the record here, as if it's not true. Well, that's what he says. Now, if I were to approach this record myself from the ground up to make my own adverse credibility finding or credibility finding, I might do something different. But as it comes to us, we are compelled, as has happened below, he's telling the truth. Your Honor, counsel's not saying he's lying. Counsel's saying that he has presented that his fields have been burned, but he doesn't know who did it. There's been no... He speculates that it was people who were angry with him or his family. And even back in Fiji alone, his father is still active in politics, according to his last letter on page 401. So when the judge made the material finding or the finding that things have not changed materially, while things are bad, it does not warrant a change of circumstances. Wasn't his family telling him in light of the burnings that you better not come back? Yes, Your Honor, they were. And the house is burned down and they say don't come back? The house and the sugarcane field, Your Honor. But I see him over my head. The question isn't whether he's entitled to asylum from that, but the question is, do those conditions, are they a sufficient change that the clock starts to run again on the possibility of asylum? No, Your Honor. The nature of his claim has not changed. The evidence in the record, the judge's decision is supported by all the evidence in the record, and that's what he based his decision on. When you say the nature of his claim has not changed, do you mean he continues to say there's persecution? But that's not the changed conditions question. The changed conditions question is, well, what is it about the country that might have changed that makes his claim stronger or something that, you know, all of a sudden he's got a plausible claim, whereas before when his party was in power, I mean, to make an asylum claim based on persecution by the other party when your party's in power borders on the frivolous. All of a sudden your party's out of power and the party that persecutes Indo-Fijians and those who agree with them is in power is no longer a frivolous claim. It may or may not be a winner, but what had been frivolous is no longer frivolous. It's the same claim. That's right. So you say it's the same claim, but that's not the issue. The immigration judge recently found that things had not changed, there had not been material changes in Fiji to warrant the changed circumstances or to warrant his untimely asylum application. Did you ever make an argument that he did not apply for asylum within a reasonable time of the alleged changed conditions? That was not a finding of the immigration judge. No, that's not my question. Did you ever make an argument to that effect? I don't believe I made the argument that he didn't apply within a reasonable time period. And the extraordinary circumstances argument we argued that wasn't exhausted or articulated below. Okay. Because I heard from the other side that you never made the argument about reasonable time and you're confirming that you never made the argument. No, Your Honor, that wasn't before the end. May I sum up, Your Honor? Yeah, please. Based on the fact that Mr. Tuankani failed to meet the burden of demonstrating changed circumstances in Fiji, failed to demonstrate that the immigration judge violated his due process rights, or the Board erred in rendering his decision on a one-member panel, the Court should dismiss the petition for review. Thank you. Thank you very much. Now, we've taken the government over, we've taken you over, and why don't we give you two minutes to respond. And you can use some or all. Let me suggest in your response, you don't need to address the jurisdiction issue because we're going to let you file a brief on that. Address the merits of the case. Thank you, Your Honor. That's my suggestion. Your Honor, as in St. Cyr, the potential for unfairness in this situation is significant and manifest. The consequences of failure to apply statutorily provided exception in the asylum context is particularly severe, lest an arbitrary procedural time limit intended to weed out frivolous cases subject an applicant to persecution. The petitioner submits that the undisputed facts in this case compel the conclusion that the petitioner is eligible for the waiver of the one-year filing rule based on changed circumstances. As well, the petitioner is eligible for the waiver of the one-year rule exception based on extraordinary circumstances, the regulations specifically listing examples, including that he was maintaining lawful status. What's your response to the government's argument that he didn't exhaust the extraordinary circumstances issued before the BIA? In our briefs to the BIA below and to this Court, we specifically mentioned a waiver of the one-year filing rule based on changed circumstances and extraordinary circumstances. We mentioned both. There are subcategories both of that statute that we did mention. In other words, the government had sufficient notice that that was our argument. If there are subcategories, don't you have to argue each one separately and distinctly? No, this is the statutory provision. And there are two grounds, two bases, and we specifically mentioned in our briefs to the BIA that he was eligible for a waiver based on changed conditions and extraordinary circumstances. I ask this Court to consider the fact that the petitioner has actively pursued this case for eight years and, again, that denying the waiver in the context of the asylum case is particularly severe. Thank you, Your Honors. Okay. And we will file an order for additional briefing on this question as to what do we do about the failure to enter a final order of removal. Thank you. Okay. Thank you. The case of Tuiwanukai v. Holder is now submitted for decision. Thank you. The next case on the argument calendar, and I'm going to have trouble pronouncing this one, too, Hapidudin v. Holder.
judges: Fletcher, Gould, Tallman